■ BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 3, TOWN OF BROOKHAVEN, Respondent, et al., Plaintiff, v. NATIONAL EDUCATION ASSOCIATION OF THE UNITED STATES et al., Appellants.— In an action for an injunction and money damages, defendants appeal from so much of an order of the Supreme Court, Suffolk County, entered August 3, 1970, as denied their separate motions to dismiss the complaint, pursuant to CPLR 3211 (subd. [a]), to the extent that the motions were addressed to the cause of action of respondent. Order affirmed insofar as appealed from, with $20 costs and disbursements. No opinion. Munder, Latham, Christ and Brennan, JJ., concur. Hopkins, Acting P. J., dissents and votes to reverse the order insofar as appealed from and to grant defendants' motions to dismiss respondent's cause of action, with the following memorandum: The plaintiff School District has sued for an injunction against defendants, both associations of teachers, from making or distributing statements calling upon teachers not to take employment in the School District or from applying sanctions against any teacher who takes such employment, and requiring defendants to distribute a notice that their actions in sending a previous statement were illegal; and for money damages. Defendants moved to dismiss the complaint upon affidavits (CPLR 3211, subd. [a]). The Special Term has found that the School District's cause of action, read in light of the affidavits, is sufficient. I cannot agree. The record before us establishes that a bargaining contract had been entered into on September 5, 1969 between the Port Jefferson Station Teachers Association and the District for the following two years. Issues arose between the parties concerning the interpretation and enforcement of the terms of the contract. Sometime in December, 1969 an arbitrator was appointed by the Suffolk County Department of Labor at the instance of the Teachers Association, which claimed that the contract provided for that relief. The District in January, 1970 applied for a stay of the arbitration. The Teachers Association is not affiliated with either defendant, although some of its members are also members of defendants.[1] On March 16, 1970 the defendant State Teachers Association (NYSTA) sent to its member associations and student associations a statement headed " Urgent Advisory ", in which it was said that the District " is not an appropriate place at present in which professional teachers should seek employment ", and in which the president of NYSTA called upon " all teachers in the State not to make application or take employment " in the District " until the current situation between the Port Jefferson Station Teachers Association, Inc., and the school district officials is resolved "; the statement said that this action was made necessary because the district had " blatantly frustrated peaceful methods of maintaining harmonious and cooperative employer-employee relationships ". In April, 1970 this action followed; the District sought a preliminary injunction against defendants which in effect would have granted the relief demanded in the complaint — except for the money damages. The motion was denied and thereafter defendants moved to dismiss the complaint. Plaintiff School District's claim for injunction borders closely on the restraint of free speech forbidden by the First Amendment of the Federal Constitution and by the State Constitution (art. I, § 7). " Regulations aside, there is

1. The Teachers Association has about 240 members; about 177 of them are members of the defendant State Teachers Association (NYSTA); and about 114 of them are members of the National Education Association (NEA).

no power in government under our Constitution to exercise prior restraint of the expression of views, unless it is demonstrable on a record that such expression will immediately and irreparably create injury to the public weal — not that such expression, without itself being unlawful, will incite criminal acts in others" (*Matter of Rockwell* v. *Morris,* 12 A D 2d 272, 277–278, affd. 10 N Y 2d 721, cert. den. 368 U. S. 913). The School District's cause of action alleges two grounds as demonstration that the public weal will be "immediately and irreparably" injured; first, that the strength and standing of defendants as teachers' organizations permit the imposition of effective sanctions against their members who do not comply with the request to refuse employment with the District; and second, that defendants' actions have hindered the School District in obtaining teachers in the discharge of the responsibility cast upon it by the State to provide education in its community. These two considerations, in the School District's view, constitute unlawful coercion which cancels defendants' constitutional right of free speech (cf. *Board of Education* v. *New Jersey Educ. Assn.,* 96 N. J. Super. 371, affd. 53 N. J. 29). But the School District's grievance is not supported in the record before us. First, there is nothing which shows that the defendant NEA has issued any statement critical of the School District, or even suggesting that NEA's members refrain from accepting employment with the School District. Certainly, there is nothing indicating that the NEA has imposed or threatened to impose sanctions against any of its members who accept such employment. Second, there is nothing in the record which establishes that the defendant NYSTA has followed its "Urgent Advisory" with disciplinary action or threatened disciplinary action against any of its members who enter the employment of the School District. There is, indeed, evidence in the record that the NYSTA has not adopted any punitive measures against a teacher who takes or continues employment against the direction; and the NYSTA expressly disclaims any power or intention to discipline a member who does so. Third, there is scant in the record to show that the School District was prevented from discharging its educational functions by reason of defendants' actions. The School District's principal and other instructional employees speak in vague terms that prospective teachers lost interest in employment opportunities after the issuance of the statement by NYSTA and that some resignations thereafter occurred, but the record is silent whether these events were caused by the statement. Attrition in the ranks of teachers always takes place at the end of a school year for reasons which are unconnected with labor disputes. Nevertheless, the record is clear that the School District did not stop its operations because of the statement or that the quality of instruction was impaired because the School District could not acquire an adequate teaching staff on that account. Hence, we are brought to the question whether defendants may be enjoined from publishing statements derogatory of the School District's administration of its labor relations and from discouraging its members from taking employment with the School District. The Taylor Act (Civil Service Law, art. 14) prescribes the public policy of the State " to promote harmonious and cooperative relationships between government and its employees  *  *  *  by assuring, at all times, the orderly and uninterrupted operations and functions of government" (Civil Service Law, ] 200). That public policy is given effect by branding certain actions of employer and employee organizations as "improper practice[s]", among which, as applied to employee organizations, is conduct designed either to interfere with or coerce a public employee in the exercise of his right to join or not to join a labor organization, or to refuse to negotiate collectively with a public employer (Civil Service Law, § 209-a). Neither of

these actions was engaged in by defendants. What they did was to support the local bargaining unit in its dispute with the School District; and its support went no further than verbal exhortations not to seek employment with the School District. A balance between individual rights of freedom and the public interest in maintaining the efficiency of the school system must be recognized (*Pickering* v. *Board of Educ.*, 391 U. S. 563). But the burden is always on the State to prove that the action to be restrained would materially interfere with the necessary operations of a public function (cf. *Tinker* v. *Des Moines School Dist.*, 393 U. S. 503, 506, 512–513). The statement of NYSTA may have been shallow or misguided or unfair, yet the correction must come by the persuasive force of a counter statement from the School District, and not by court injunction (*Near* v. *Minnesota*, 283 U. S. 697; cf. *Thomas* v. *Collins*, 323 U. S. 516). Unless it is demonstrated, therefore, that the exercise of the right of free expression is accompanied by intentional falsity, or overbearing tactics, which so far disturb the balance between the opposing parties that it cannot be restored by the response of the lawful means open to the one attacked, that right of free expression should not be curtailed. On this record the School District's cause of action, considered in the light of the undisputed facts, shows neither that the balance was put awry or that the operations of the School District were materially impeded. I vote accordingly to reverse the order insofar as appealed from and to dismiss the School District's cause of action.